UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NOLAN C. DAVIS, SR.                                    CIVIL ACTION

VERSUS                                                NO.  09-7195

MARLIN GUSMAN ET AL.                                  SECTION "F" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Nolan C. Davis, Sr., is a prisoner currently incarcerated in the Allen Correctional Center in Kinder, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin N. Gusman, Orleans Parish Prison ("OPP") Medical Director Samuel Gore, Major C. Jones, Jr., Major Jenkins, Warden Joe Howard, Warden C. Golini and Chief Rudy Belize. Davis alleges that he was provided with inadequate medical treatment for his eye condition and was subjected to unconstitutional conditions of confinement while incarcerated in OPP for about eight (8) months in late 2008 through mid-2009.  Plaintiff seeks declaratory and injunctive relief and compensatory and punitive damages.  Record Doc. No. 1, Complaint at ¶¶ IV, V.

On January 14, 2010, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Timothy Richardson, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Davis filed two previous lawsuits in this court concerning allegations similar to those he asserts in this matter. The first case, concerning conditions of his confinement at OPP, was Civil Action No. 09-3221"F"(2). That case was dismissed without prejudice based on plaintiff's failure to exhaust administrative remedies. C.A. No. 09-3221"F"(2), Record Doc. Nos. 15, 16.

The second case, concerning medical care for his eye cataract condition, Civil Action No. 09-2784"I"(2), was dismissed with prejudice based on defendants' motion for summary judgment, which was granted. Record Doc. Nos. 43, 44 in C.A. No. 09-2784"I"(2). However, the motion and dismissal concerned only plaintiff's medical care through the date of my prior report and recommendation, May 13, 2009 (at the latest).[1] Thus, it cannot be said that Civil Action No. 09-2784 addressed Davis's claims in the captioned matter that he received inadequate medical care after that date.

During the Spears hearing in the instant case on January 14, 2010, Davis testified that he is currently incarcerated at Allen Correctional Center, following his transfer from

_____

[1] Plaintiff testified during a Spears hearing in No. 09-2784 on April 23, 2009. On April 30, 2009, he filed a memorandum, statement of disputed facts and declaration in opposition to defendants' motion for summary judgment in that case. The last medical event to which he referred in his submissions occurred during "the first week of April" 2009. C.A. No. 09-2784, Record Doc. No. 37, at p.8 ¶ 3. Even if the first week of April is considered the effective date of the final judgment in that case for claim preclusion purposes, the analysis is the same and my recommendation in the instant case would not change.

OPP on June 23, 2009. He stated that he was convicted of aggravated burglary and simple burglary on April 29, 2009, and is currently serving a 12-year prison sentence. He confirmed that he makes two kinds of claims in this case: (1) that the conditions of his confinement at OPP were unsanitary, and (2) that he received inadequate medical care for his cataract condition while at OPP.

As to his eye condition, Davis testified that his prior case addressed treatment for his cataract at OPP through April 23, 2009, but that he spent about two more months at OPP after that date. He testified that he had received and reviewed the medical records from OPP that I ordered concerning that two-month period. Record Doc. Nos. 6, 29. He confirmed that the records are accurate, specifically the "Physicians Notes" of April 28 and 30, 2009, which indicate that he had a follow-up examination concerning his blood pressure condition and was cleared at that time for cataract surgery. He thought that he was seen by either Dr. Dileo or Dr. Gore at OPP on that date. He also confirmed the accuracy of the "Physicians Orders" in the medical records, also dated April 28, 2009, stating "reschedule opthamology for admission for cataract surgery," in which the OPP physicians concluded that his blood pressure was then sufficiently under control that he was cleared for cataract surgery at that time. Davis also confirmed the reference in the LSU hospital "Inmate Progress Notes" dated May 12, 2009, scheduling him for surgery on May 18, 2009, but he testified that he did <u>not</u> go back to the hospital for surgery on

that date.  Davis testified that he received no other treatment for his eye condition before his transfer from OPP about a month later, on June 23, 2009.

Davis testified that his cataract surgery was performed about three (3) weeks after his transfer from OPP, on July 14, 2009 at University Hospital in New Orleans, while he was in custody at the Hunt Correctional Center.  He testified that he was transported from Hunt in St. Gabriel, Louisiana, to New Orleans for the surgery, which lasted three and one-half hours and was successful.  Asked if he has experienced any additional eye problems since the surgery, Davis replied, "just a few pains."  He said he is currently receiving follow-up attention for his eye at the Louisiana State University hospital in Shreveport.

Plaintiff stated that his complaint in this case is that he should have received his eye surgery while he was incarcerated in OPP.  Asked if he is experiencing any lingering eye problems, he stated, "I'm still . . . there's still a blurry situation, but right now I'm waiting to be prescribed for my glasses."  He confirmed that his surgery was to remove the cataract and replace a lens, both of which were performed.  He asserted that he believes proper care for his eye at OPP was denied "continuously," in that he was scheduled for surgery twice, but did not receive it timely through OPP officials.  He stated that he was never aware that he was scheduled for surgery until he received his medical records in connection with this case.  He asserted that his surgery was

improperly postponed in March 2009, even though his high blood pressure should not have been an impediment to surgery at that time.

As to his claim concerning the conditions of his confinement at OPP, Davis's written submissions, which are summarized below, are extensive. During his testimony, he clarified that his claims about conditions of confinement relate to the entire eight-month period of his incarceration at OPP, from October 30, 2008 through his transfer to another facility on June 23, 2009. He stated that he was housed in three facilities at OPP, including HOD (the "House of Detention"), where he was first kept for one and one-half to two weeks. He said he was then moved to "a temporary facility, the tents, [and] I was there until February 2009." He said he was next confined in "the old jail" at OPP until his transfer.

Davis testified that the conditions about which he complains in this case occurred in all three OPP facilities. He alleged that, as a pretrial detainee, he slept on the floor "numerous days, until a bunk was open." He estimated that he slept on the floor for five days while in HOD. He said he had a bunk while in the tents, but that he had to sleep on a mattress on the floor for about two weeks in "the old jail."

Davis also testified that it was "overcrowded" in both HOD and "the old jail." Specifically, he described the overcrowded conditions as follows: "HOD holds a 10-man cell. We had 16 men in a cell," where he was housed for about one and one-half weeks.

He said that the 10-man cells are equipped with 10 bunks, but that he was one of the inmates without a bunk for a short time.  He said he was sent from HOD to the temporary tent facility, where he had a bunk.  He complained, however, that the tents were always dirty, with "mice running all over the place."  He said food was delivered and placed on the floor, which was a concrete slab, and was not placed in "warmers."  He confirmed that he was in the tent facility for about four months.

As to the conditions at "the old jail," he said he slept on the floor for two weeks and "it was just dirty."  He testified that he was provided with cleaning supplies at times, and "then we had no supplies."  He said he asked for supplies but did not receive them until he "had to keep asking over and over again."  He complained that the floors were not mopped and from time to time he had to get a mop and mop the floor himself.  As to overcrowding in "the old jail," he stated that, of 40 men housed in a dorm/day room area, eight to 10 men would have to sleep on the floor.  He testified that he was given a mattress on which he slept for about two weeks, so that he did not have to sleep on the hard floor.  He said he received a bunk in "the old jail" after about two weeks.

Davis described the "day room" as a space of about 20 feet by 30 feet, with bars separating the day room from the attached dorm area, where the bunks were located.  He said there were 33 bunks in the dorm area, and the combined dorm/day room area housed about 40 men.  He said the inmates were fed in the day room.  He alleged that security

was inadequate and that sometimes there were no security officers visible for up to three-hour periods. He confirmed that he personally suffered no physical harm as a result of the alleged lack of security. He said, however, "I felt my life was threatened" because he saw six to ten other inmates stabbed, although he was not stabbed himself. "I felt insecure," he said.

In his lengthy handwritten attachment to Paragraph IV of his form complaint, plaintiff alleged that HOD was one of only a few OPP structures available to house inmates after Hurricane Katrina and that it soon became overcrowded. Record Doc. No. 1 (Attachment to ¶ IV of Complaint) at ¶ 17-21. Davis further alleged that "[i]n February 2009, H.O.D. closed due to deplorable condition [sic] and the main prison open[ed] back up from minor repairs due to Hurricane Katrina." Id. at ¶ 22. He averred that, due to "increasing inmate population, the tents, originally . . . conceived as a temporary system," were opened in 2009. Id. at ¶¶ 23, 24. He alleged that overcrowding has "taken its toll on the physical condition in the jail, resulting in deplorable environment condition. Each housing unit is dirty, decrepit and unsanitary." Id. at ¶¶ 27, 28. He asserted that "the collection of garbage and filth provide breeding places" for vermin and disease and that the facility lacks general housekeeping supervision. "Thus, inmates have sole responsibility for sanitation." Id. at ¶ 31. He alleged that many inmates refuse to clean themselves or the units, and "the jail does not provide adequate

cleaning supplies." Id. at ¶¶ 32-36. He asserted that the air circulation, exhaust and ventilation systems are inadequate, id. at ¶¶ 37-40, and the showers and bathrooms are insufficient in number, dirty and smelly. Id. at ¶¶ 41-46. He also alleged that the jails are understaffed, with several "blind spots . . . where incidents occur unknown to the deputies," all resulting in "blatant disregard for inmate safety." Id. at ¶¶ 48-52.

Three dispositive motions are pending in this matter. Prior to the Spears hearing, plaintiff filed a motion for summary judgment. Record Doc. No. 25. Defendants filed a written opposition to plaintiff's motion. Record Doc. No. 26.

Defendants filed two, apparently identical, motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that plaintiff's complaint in this matter is barred by the doctrine of res judicata. Record Doc. Nos. 17, 20. Specifically, defendants contend that plaintiff's claims were previously litigated and dismissed upon the granting of defendants' motion for summary judgment in C.A. No. 09-2784"I"(2) in this court. Although C.A. No. 09-2784"I"(2) only contained claims relating to plaintiff's medical care, defendants' motions appear to request, and the court will assume for purposes of these motions that they do request, dismissal of all of plaintiff's claims in the instant action, based on res judicata as a result of both of plaintiff's prior lawsuits.

Plaintiff filed a written opposition to defendants' motions. Record Doc. No. 32. In addition, his sworn testimony provided during the January 14th hearing and his other

written submissions have been considered in opposition to the motion and in connection with the screening procedure described below.

For the following reasons, **IT IS RECOMMENDED** that plaintiff's motion for summary judgment be denied. **IT IS FURTHER RECOMMENDED** that defendants' motions to dismiss be denied. **IT IS FURTHER RECOMMENDED**, however, that even to the extent that claim preclusion does not bar plaintiff's complaint, accepting his testimony as true for purposes of both screening and the pending motions, Davis cannot establish a claim of unconstitutional medical care or conditions of confinement cognizable under Section 1983, and his complaint must be dismissed pursuant to 28 U.S.C. § 1915(e).

## ANALYSIS

I.    STANDARDS OF REVIEW

The following three distinct, yet related, legal standards apply to the current posture of this case.

(A)    28 U.S.C. § 1915A Screening

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis

v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504

U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff,

dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

(B)     <u>Rule 12(b)(6) Motions to Dismiss</u>

Defendants filed two, apparently identical, motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). In two recent opinions, the United States Supreme Court clarified the standard for reviewing a motion to dismiss. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007). The Fifth Circuit has explained the Supreme Court's current standard as follows.

> When reviewing a motion to dismiss, we must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" The Supreme Court in <u>Iqbal</u> explained that <u>Twombly</u> promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. First, we must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." Legal conclusions "must be supported by factual allegations."

> Upon identifying the well-pleaded factual allegations, we then "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Rhodes v. Prince, No. 08-10794, 2010 WL 114203, at *1-2 (5th Cir. Jan. 12, 2010) (quoting Iqbal, 129 S. Ct. at 1949, 1950; Twombly, 550 U.S. at 555; Gonzales v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)) (citing Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996)).

The Supreme Court emphasized that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. Iqbal, 129 S. Ct. at 1949. The facial "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quotation omitted).

At least one post-Twombly Fifth Circuit panel reiterated the familiar concept that motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted. Rodriguez v. Rutter, 310 Fed. Appx. 623, 2009 WL 301835, at *3 (5th Cir. 2009) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000); Kaiser Alum. & Chem. Sales v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir. 1982)); accord Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 (5th Cir. 2005) (citing Shipp v. McMahon, 199 F.3d 256, 260 (5th Cir. 2000)).

13

(C)     Summary Judgment

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the nonmoving party's case. Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"A fact is 'material' if its resolution in favor of one party might affect the outcome of the action under governing law. An issue is 'genuine' if the evidence is sufficient for a rational trier of fact to return a verdict for the nonmoving party." Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)).

When plaintiff is the moving party and bears the burden of proof on the claims for which he seeks summary judgment, he must establish "beyond peradventure all of the essential elements of his claims. This means that [plaintiff] must demonstrate that there are no genuine and material fact disputes on any of the essential elements of each claim." Robax Corp. v. Professional Parks, Inc., No. 3:07-CV-1399-D, 2008 WL 3244150, at *2

(N.D. Tex. Aug. 8, 2008) (citing <u>Martin v. Alamo Cmty. Coll. Dist.</u>, 353 F.3d 409, 412 (5th Cir. 2003); <u>Fontenot v. Upjohn Co.</u>, 780 F.2d 1190, 1194 (5th Cir. 1986)) (quotation omitted); <u>accord</u> <u>Lloyd v. Lawrence</u>, 472 F.2d 313, 318 (5th Cir. 1973); <u>Davis v. GHX, Inc.</u>, No. H-08-1984, 2010 WL 793557, at *2 (S.D. Tex. Mar. 8, 2010); <u>Wetzel v. Slidell Police Dep't</u>, No. 09-14, 2009 WL 1507575, at *3 (E.D. La. May 28, 2009) (Barbier, J.); <u>Green v. American Commercial Sec. Servs., Inc.</u>, No. C07-1837MJP, 2008 WL 1969649, at *3 (W.D. Wash. May 5, 2008).  Plaintiff must "affirmatively demonstrate through his summary judgment briefing and evidence that no reasonable trier of fact could find against him. . . .  Moreover, the evidence presented by the parties on summary judgment must be admissible."  <u>Id.</u> (citing Fed. R. Civ. Proc. 56(e); <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007); <u>Watts v. United States</u>, 703 F.2d 346, 347 (9th Cir. 1983)).

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."  <u>Edwards v. Your Credit, Inc.</u>, 148 F.3d 427, 432 (5th Cir. 1998); <u>accord</u> <u>Murray v. Earle</u>, 405 F.3d 278, 284 (5th Cir. 2005).

In this case, as discussed below, all of plaintiff's claims must be dismissed with prejudice under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous because they lack an arguable basis in law or under Rule 12(b)(6) in light of his

testimony explaining the factual basis of his claims, because plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a cognizable Section 1983 claim under the broadest reading.[2]

## II.     MOTIONS TO DISMISS / FOR SUMMARY JUDGMENT

### (A)     Defendants' Motions to Dismiss:  Claim Preclusion

Defendants argue that Davis's claims are barred by res judicata.  Res judicata is a collective term that encompasses both issue preclusion and claim preclusion.  <u>Taylor v. Sturgell</u>, 128 S. Ct. 2161, 2171 (2008).  Defendants' motions to dismiss are based on claim preclusion only.   "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."  <u>Id.</u> (quotation omitted).

Defendants argue that plaintiff's claims are barred by claim preclusion, based on his previous lawsuits in this court against some of the same defendants in which Davis alleged violations of his federal civil rights, including inadequate medical care for his cataract condition, <u>Davis v. Gusman</u>, C.A. No. 09-2784 "I"(2), and unconstitutional conditions of confinement at OPP.   <u>Davis v. Gusman</u>, C.A. No. 09-3221 "F"(2). Defendants were dismissed from the first case on summary judgment motion before trial.

---

[2] Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

C.A. No. 09-2784"I"(2), Record Doc. Nos. 43, 44. They were dismissed from the second case <u>without</u> prejudice on a finding by the court that plaintiff had failed to exhaust available administrative remedies procedures. C.A. No. 09-3221"F"(2), Record Doc. Nos. 14, 15.

"The preclusive effect of a federal-court judgment is determined by federal common law." <u>Taylor</u>, 128 S. Ct. at 2171 (citation omitted). Federal law of claim preclusion

> "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." The test for claim preclusion has four elements: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits. If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred. When all four elements are present, claim preclusion prohibits a litigant from asserting "any claim . . . in the later action that was or could have been raised in support of . . . the cause of action asserted in the prior action."

<u>Duffie v. United States</u>, No. 08-20708, 2010 WL 786532, at *8 (5th Cir. Mar. 10, 2010) (quoting <u>Test Masters Educ. Servs.</u>, 428 F.3d at 571; <u>United States v. Shanbaum</u>, 10 F.3d 305, 310 (5th Cir. 1994)) (citing <u>Ellis v. Amex Life Ins. Co.</u>, 211 F.3d 935, 937 (5th Cir. 2000)); <u>accord</u> <u>Richardson v. Desoto Sheriff's Dep't</u>, 51 Fed. Appx. 482, 2002 WL 31318792, at *1 (5th Cir. 2002).

Claim preclusion "is an affirmative defense. Ordinarily, it is incumbent on the defendant to plead and <u>prove</u> such a defense, and we have never recognized claim preclusion as an exception to that general rule." <u>Taylor</u>, 128 S. Ct. at 2179-80 (citing Fed. R. Civ. P. 8(c); <u>Blonder-Tongue Labs., Inc. v. University of Ill. Found.</u>, 402 U.S. 313, 350 (1971); <u>Jones v. Bock</u>, 549 U.S. 199, 204 (2007)) (emphasis added); <u>see</u> <u>id.</u> at 2180 (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice & Procedure</u> § 4405, at 83 (2d ed. 2002) (hereinafter "Wright & Miller") "('[A] party asserting preclusion must carry the burden of establishing all necessary elements.')").

Thus, for defendants to obtain dismissal under Rule 12(b)(6), they must satisfy all four elements of the claim preclusion test. If any one factor is not established as to a particular claim of plaintiff's, defendants' motions to dismiss must be denied as to that claim.

(1)  Claim Preclusion Does Not Bar Plaintiff's Conditions of Confinement Claims

Claim preclusion does not bar plaintiff's conditions of confinement claims in the instant action. No final judgment on the merits was entered in his previous conditions of confinement case, C.A. No. 09-3221"F"(2), which was dismissed <u>without</u> prejudice for failure to exhaust administrative remedy procedures. Because defendants cannot establish the third prong of the claim preclusion test as to plaintiff's conditions of

confinement claims, defendants' motions to dismiss should be denied as to all of those claims.

(2)     Claim Preclusion Does Not Bar Plaintiff's Medical Care Claims

As to Davis's medical care claims, I will pretermit consideration of the first factor of the claim preclusion test until after I discuss the other three factors, which require only brief analysis and one of which is partially dispositive.

The second factor, whether the judgment in the prior case was rendered by a court of competent jurisdiction, is clearly satisfied. Davis brought his prior case in this court pursuant to 42 U.S.C. § 1983, and the judgment was rendered by a court of competent jurisdiction.

The third element of the test, whether there has been a final judgment on the merits, is satisfied only in part. There was a final judgment on the merits of plaintiff's claims in his previous case concerning his medical care, C.A. No. 09-2784"I"(2), which was dismissed with prejudice on summary judgment, but only as of May 13, 2009, the date of my previous report and recommendation in that case. Because the third factor is not satisfied as to that portion of plaintiff's medical care claims that accrued after May 13, 2009, defendants' motions to dismiss should be denied as to that portion of his claims, for which no final judgment was ever rendered.

Therefore, the only part of Davis's claims in the instant action as to which defendants' motions to dismiss could be granted is his medical care claim <u>before</u> May 13, 2009.  As to that claim, I determine next whether the fourth element of the claim preclusion test is met, <u>i.e.</u>, whether the same claim or cause of action is involved in both his prior medical care case, C.A. No. 09-2784"I"(2), and the instant case.

"To determine whether two suits involve the same claim under the fourth element, this court has adopted the transactional test of the Restatement (Second) of Judgments, § 24.  Thus, the critical issue is whether the two actions under consideration are based on the <u>same nucleus of operative facts</u>."  <u>In re Southmark Corp.</u>, 163 F.3d 925, 934 (5th Cir. 1999) (quotation and citations omitted); <u>accord</u> <u>Cuauhtli v. Chase Home Fin. LLC</u>, 308 Fed. Appx. 772, 2009 WL 188072, at *2 (5th Cir.), <u>cert. denied</u>, 129 S. Ct. 2447 (2009); <u>Richardson</u>, 2002 WL 31318792, at *1-2.

Davis's written submissions and testimony make clear that the operative facts underlying his claim of inadequate medical care before May 13, 2009 in the instant case are based on the same nucleus of operative facts that he asserted in C.A. No. 09-2784"I"(2), his prior medical care case.  Thus, the fourth factor of the claim preclusion test is satisfied as to this claim.

Finally, the sole remaining question for claim preclusion purposes is whether defendants satisfy the first element of the claim preclusion test; that is, are the defendants

in the current action identical to or in privity with any defendant in plaintiff's prior action concerning allegedly inadequate medical care before May 13, 2009? <u>Duffie</u>, 2010 WL 786532, at *8; <u>United States v. Davenport</u>, 484 F.3d 321, 326 (5th Cir. 2007) (citing <u>In re Southmark Corp.</u>, 163 F.3d at 934).

In C.A. No. 09-2784, his prior medical care case, Davis sued Sheriff Gusman, Dr. Gore (whom Davis described as the Medical Administrator) and Dr. Ham (whom he described as the Administrator for scheduling medical appointments outside the prison). In the instant action, defendants Sheriff Gusman and Dr. Gore are identical parties as in plaintiff's prior suit, so the first element of the test is met as to these two defendants.

Davis also sued Warden Howard, Chief Belize, Major Jones, Major Jenkins and Warden Golini in the instant case, none of whom is identical to a defendant in plaintiff's prior medical care lawsuit. These defendants argue conclusorily, without any citation to facts or any legal analysis, that they are in privity with the previous defendants.

Privity is defined generally as "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter (such as a transaction, proceeding, or piece of property); mutuality of interest[, <u>e.g.,</u>] 'privity of contract.'" <u>Black's Law Dictionary</u> (8th ed. 2004). "A defendant who was not a party to the earlier action can assert res judicata so long as he is in 'privity' with the named defendant. The question of <u>whether privity exists is a factual inquiry</u> . . . ." <u>Dilworth v.</u>

Vance, 95 F.3d 50, 1996 WL 457425, at *1 (5th Cir. 1996); accord Royal Ins. Co. v.

Quinn-L Capital Corp., 960 F.2d 1286, 1297 (5th Cir. 1992).

Although the question whether privity exists for claim preclusion purposes is a

factual inquiry, a finding of privity

> is "a legal conclusion that the relationship between the one who is a party
> on the record and the non-party is sufficiently close to afford application
> of the principle of preclusion." In other words, privity is "merely another
> way of saying that there is sufficient identity between parties" for res
> judicata to apply. It is a label that expresses the determination that
> preclusion is justified. "Privity is not a requirement [the court] can satisfy
> through inquiry; rather the existence of 'privity' is the inquiry satisfied."
> Given these circular pronouncements, it is understandable that privity has
> been called an "elusive and manipulable concept." The United States
> Supreme Court has even described it as being "conclusory and analytically
> unsound."

United States ex rel. Kennard v. Comstock Res., Inc., No. 9:98-CV-266-TH, 2009 WL

765002, at *6 (E.D. Tex. Mar. 23, 2009) (quoting Montana v. United States, 440 U.S.

147, 154 n.5 (1979); Russell v. SunAmerica Sec. Inc., 962 F.2d 1169, 1174 (5th Cir.

1992); Meza v. General Battery Corp., 908 F.2d 1262, 1266 (5th Cir. 1990); Southwest

Airlines Co. v. Texas Int'l Airlines, Inc., 546 F.2d 84, 95 (5th Cir. 1977)) (citing 18A

Wright & Miller, § 4449, at 351 n.33).

The United States Supreme Court in Taylor recently examined the reach of non-

party preclusion and pointed out that the term "privity" had acquired multiple meanings.

Thus, "to ward off confusion," the Court avoided using the term. Taylor, 128 S. Ct. at

2172 n.8.  Instead, the Court recognized six categories of non-party relationships that are sufficient to justify preclusion.  Id. at 2172-73.  Three of those categories mirrored the three limited categories that the Fifth Circuit has consistently recognized, as follows:

> For res judicata purposes, this court has held that privity exists in just three, narrowly-defined circumstances: (1) where the non-party is the successor in interest to a party's interest in the property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit.

Dilworth, 1996 WL 457425, at *1 (quoting Meza, 908 F.2d at 1266) (citing Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha, 754 F.2d 591, 599 (5th Cir. 1985)) (emphasis added); cf. Taylor, 128 S. Ct. at 2172-73 ("Second, nonparty preclusion may be justified based on a variety of pre-existing substantive legal relationship[s] between the person to be bound and a party to the judgment," such as "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor."  "Third, we have confirmed that, in certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who [wa]s a party to the suit."  "Fourth, a nonparty is bound by a judgment if she assume[d] control over the litigation in which that judgment was rendered.") (quotations omitted).[3]

---

[3]The other three categories recognized by the Supreme Court are clearly inapplicable here.  See id. at 2172-73 ("First, [a] person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement."  "Fifth, a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy."  "Sixth, in certain circumstances a special statutory scheme may expressly foreclos[e] successive litigation by

In the instant case, the non-identical defendants have provided neither factual allegations nor argument concerning which of these three circumstances they contend puts them in privity with the previous defendants, Sheriff Gusman, Dr. Gore and Dr. Ham. There is no property involved, so the first circumstance is inapplicable. It is unlikely that any of these current defendants, who appear by their titles to be subordinates of Sheriff Gusman, would have controlled the prior litigation against him and the doctors. Thus, it seems that only the third circumstance could apply to Warden Howard, Chief Belize, Major Jones, Major Jenkins and Warden Golini, i.e., that these defendants' interests were adequately represented by the defendants in the original suit.

As to adequate representation, the Supreme Court noted in Taylor that a

> party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty. In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented.

Taylor, 128 S. Ct. at 2176 (citations omitted).

In the same context, the Fifth Circuit has held that a non-party

> is adequately represented where a party in the prior suit is so closely aligned to her interests as to be her virtual representative. This requires

---

nonlitigants . . . if the scheme is otherwise consistent with due process.") (quotations omitted).

more than a showing of parallel interests–it is not enough that the non-party may be interested in the same questions or proving the same facts.

Eubanks v. Federal Deposit Ins. Co, 977 F.2d 166, 170 (5th Cir. 1992) (citing Meza, 908 F.2d at 1266, 1267); Freeman v. Lester Coggins Trucking, Inc., 771 F.2d 860, 864-65 (5th Cir.1985); Delta Air Lines, Inc. v. McCoy Restaurants, Inc., 708 F.2d 582, 587 (11th Cir. 1983)) (emphasis added).

Although the Supreme Court in Taylor disapproved of the term "virtual representation" and overruled the doctrine of virtual representation as it had been too broadly defined and applied by the D.C. Circuit, Taylor, 128 S. Ct. at 2167, the Supreme Court approved the three categories of adequate representation that have been used by the Fifth Circuit. The Court deemed those categories sufficient to justify applying the preclusive effects of a prior judgment to a non-party. Id. at 2170 n.3, 2172-73. Thus, the Fifth Circuit's case law on "virtual representation," which is limited to those three categories, is still binding precedent on this court.

In two post-Taylor decisions that addressed the identity of interest prong of the claim preclusion test, the Fifth Circuit did not decree that district courts should stop using the terms "privity" or "virtual representation." In Cuauhtli,

> the Fifth Circuit recognized that Taylor had "articulated six exceptions to the identical party rule." The [Fifth Circuit's] discussion of identity suggests that the Taylor exceptions should be used to analyze this element of claim preclusion; and the imprecise label of "privity" should be discarded. But, it has not formally taken this position.

United States ex rel. Kennard, 2009 WL 765002, at \*7 n.7 (quoting Cuauhtli, 2009 WL 188072, at \*1); see also Taylor, 128 S. Ct. at 2178 ("Although references to 'virtual representation' have proliferated in the lower courts, our decision is unlikely to occasion any great shift in actual practice.  Many opinions use the term 'virtual representation' in reaching results at least arguably defensible on established grounds."); Frank C. Minvielle LLC v. Atlantic Ref. Co., 337 Fed. Appx. 429, 2009 WL 2222885, at \*5 (5th Cir. 2009), cert. denied, 130 S. Ct. 1284 (2010) (citing Taylor, 128 S. Ct. at 2172; Test Masters Educ. Servs., 428 F.3d at 571) (stating that the first prong of claim preclusion under Fifth Circuit case law is whether the parties in the current lawsuit are "identical to or in privity with" parties in the first action and that Taylor "reaffirmed" that "the parties need not actually be identical").

Just as the Supreme Court in Taylor found adequate representation to be a category justifying non-party preclusion if appropriately limited, the Fifth Circuit has repeatedly held that

> [v]irtual representation is a narrow doctrine.  To establish the necessary alignment of interests, it is insufficient to show that the parties have parallel interests, that the first suit was competently litigated, or even that the same attorney was used in both suits.  Virtual representation requires an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file [or defend against] a subsequent suit. Whether such a legal relationship exists is a question of fact for the trial court.

Meador v. Oryx Energy Co., 87 F. Supp. 2d 658, 665 (E.D. Tex. 2000) (citing Royal Ins. Co., 960 F.2d at 1297; Benson & Ford, Inc. v. Wanda Petroleum Co., 833 F.2d 1172, 1175 (5th Cir. 1987)) (emphasis added).  Notably, most of the cases in which claim preclusion has been upheld by the Fifth Circuit involved summary judgments, not dismissals under Rule 12(b)(6), because of the need for evidence to establish the requisite facts.  E.g., Duffie, 2010 WL 786532, at *1; Frank C. Minvielle LLC, 2009 WL 2222885, at *5; see also Taylor, 128 S. Ct. at 2179-80 (reversing grant of summary judgment to defendants and remanding to district court; stating that, on remand, defendants would have burden "to plead and prove" the elements of claim preclusion).

In the instant case, Warden Howard, Chief Belize, Major Jones, Major Jenkins and Warden Golini have not even offered any factual allegations, much less any evidence, to show that any of them was accountable to any previous defendant regarding the provision of medical care to Davis, or that the previous defendants Sheriff Gusman, Dr. Gore and/or Dr. Ham were accountable to any of these new defendants regarding plaintiff's medical care.  Indeed, Davis does not allege in the instant case that these new defendants denied him adequate medical care; he only alleges that they failed to provide him with constitutionally adequate conditions of confinement.

On this record, it cannot be said that Sheriff Gusman, Dr. Gore and/or Dr. Ham were virtual representatives of Warden Howard, Chief Belize, Major Jones, Major

Jenkins and Warden Golini in plaintiff's previous medical care case. See Dilworth, 1996 WL 457425, at *1-2 (Prison guards, who were accused in a second lawsuit of using excessive force against plaintiff, were not in privity with the Sheriff, who had been sued in a previous action over the same incident, because the Sheriff successfully defended the first action on different grounds not involving the liability of the guards. "For these reasons, [the Sheriff's] interests were not so closely aligned with the guards' interests to warrant a finding that he adequately represented them."). Because of the lack of any evidence, or even factual allegations, to establish the relationship between the defendants in Davis's first medical care case and the non-identical defendants in the instant case as to plaintiff's medical care claim, the court cannot find that these new defendants are in privity with, or were adequately represented by, the previous defendants. Based on the absence of the first element of the claim preclusion test regarding plaintiff's claim of inadequate medical care before May 13, 2009, defendants' motions to dismiss should be denied as to that claim.

Therefore, defendants' motions to dismiss should be denied as to plaintiff's conditions of confinement claims and as to his claims of inadequate medical care, both before and after May 13, 2009.

(B)    Plaintiff's Motion for Summary Judgment

Davis filed a motion for summary judgment on all of his claims. As previously noted, he bears the burden of proof on his claims. To obtain summary judgment in his favor, he must establish "beyond peradventure all of the essential elements of his claims. This means that [he] must demonstrate that there are no genuine and material fact disputes on any of the essential elements of each claim." Robax Corp., 2008 WL 3244150, at *2 (citations and quotation omitted); accord Lloyd, 472 F.2d at 318; Davis, 2010 WL 793557, at *2; Wetzel, 2009 WL 1507575, at *3.

> A plaintiff seeking summary judgment who has failed to produce such evidence on one or more essential elements of his cause of action is no more entitled to a judgment than is a plaintiff who has fully tried his case and who has neglected to offer evidence sufficient to support a finding on a material issue upon which he bears the burden of proof. In either situation there is a failure of proof.

Lloyd, 472 F.2d at 318 (quotation and citations omitted).

Davis has failed to carry his burden of proof. He merely alleges conclusorily in his motion that Sheriff Gusman and Dr. Gore violated his constitutional rights by failing to send him for eye surgery before he was transferred out of OPP; that defendants Howard, Jones, Jenkins and Belize violated his constitutional rights because of the conditions of his confinement; and that defendant Golini denied him due process of law. The medical records to which Davis refers in his motion and the copies of grievances attached to his motion do not establish that any defendant was deliberately indifferent to

a serious medical need, that any unconstitutional conditions of confinement existed or that plaintiff's due process rights were violated in any way. Accordingly, plaintiff's motion for summary judgment should be denied.

III.   SCREENING PLAINTIFF'S CLAIMS

(A)   Medical Care

It appears that Davis was a pretrial detainee for part of the time and a convicted prisoner at all other times about which he complains about the medical care for his eye. Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held:

(1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted

inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply. Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and

wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. <u>Id.</u> at 105-06; <u>accord</u> <u>Gregg v. Georgia</u>, 428 U.S. 153, 182-83 (1976); <u>Tamez</u>, 589 F.3d at 770; <u>Hare</u>, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994). The <u>Farmer</u> definition applies to Eighth Amendment medical claims. <u>Reeves</u>, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." <u>Farmer</u>, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show deliberate indifference to his "serious medical needs" to satisfy this prong. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. <u>Farmer</u>, 511 U.S. at 838 (citing <u>Wilson</u>, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." Id. at 837; accord Tamez, 589 F.3d at 770. If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997)) (additional citations omitted) (emphasis added); accord Tamez, 589 F.3d at 770. "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

The deliberate indifference standard applies to complaints of episodic acts or omissions, as defined in Hare, by both pretrial detainees and convicted inmates. McCarty v. Zapata County, 243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing Gibbs v. Grimmette, 254 F.3d 545, 547 (5th Cir. 2001); Hare, 74 F.3d at 636). A complaint that defendants refused to provide plaintiff with immediate medical treatment qualifies as an "episodic act or omission," which triggers the deliberate indifference standard. Tamez, 589 F.3d at 770.

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue in this case. Thus, the "deliberate indifference" standard applies and plaintiff must allege facts sufficient to establish that defendants knew that he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, Davis fails completely to allege facts sufficient to establish deliberate indifference.

Initially, it cannot be concluded with certainty that Davis's cataract condition, particularly when coupled with the prudent medical judgment to defer surgery while his high blood pressure was brought under control, constitutes serious risk of harm sufficient to implicate constitutional concerns. Some courts have concluded that mild cataracts or a cataract condition as to which a delay in surgical treatment results from a "difference of medical opinion" about whether surgery is necessary do not reach the level of a serious medical need for purposes of constitutional analysis. <u>E.g.</u>, <u>Samonte v. Bauman</u>, 264 Fed. Appx. 634, 2008 WL 176462, at *1 (9th Cir. 2008); <u>Dunville v. Morton</u>, 234 F.3d 1272, 2000 WL 1206653, at *1 (7th Cir. 2000); <u>Hurt v. Mahon</u>, No. 1:09CV958, 2009 WL 2877001, at *2 (E.D. Va. Aug. 31, 2009). Other courts, however, have described cataracts that require surgical treatment as a serious medical need for purposes of constitutional analysis, especially when surgery is necessary to prevent imminent blindness. <u>E.g.</u>, <u>Campbell v. Fry</u>, 896 F.2d 1366, 1990 WL 15601, at *2 (4th Cir. 1990);

Morissette v. Ghosh, No. 08 C 2545, 2010 WL 1251443, at *6 (N.D. Ill. Mar. 23, 2010); Cobbs v. Pramstaller, No. 07-14644, 2009 WL 368248, at *8 (E.D. Mich. Feb. 12, 2009); Padichit v. Unknown Cook County Officials, 2006 WL 1897518, at *2 (S.D. Ill. July 11, 2006).

In Davis's case, there is no indication that he faced imminent blindness while incarcerated at OPP, and the medical records establish that the initial delay in his scheduled surgery was based on a prudent medical judgment concerning his high blood pressure.

Even assuming, however, that plaintiff's cataract condition presents a serious medical need for constitutional purposes, Davis has alleged facts, confirmed by the medical records, that negate any inference of deliberate indifference by jail officials. His complaint, as amended by his testimony, shows that he received constitutionally adequate medical care for his cataract condition while incarcerated at OPP. He was provided with examinations by doctors within the jail, transportation to and treatment by specialists at a hospital, medication, pre-operative examinations and ongoing monitoring of his cataract condition. It appears that the only reason his cataract surgery was delayed from March to May 2009 was the prudent exercise of medical judgment that he should not undergo surgery until his high blood pressure was brought under control. The medical records indicate that it took about a month to control plaintiff's high blood pressure with

medication. Once his blood pressure was brought under control, as noted on April 28, 2009, Davis was cleared for surgery, which was scheduled for May 18, 2009. The record does not reveal why the operation did not take place on that date. Nonetheless, Davis was transferred out of OPP on June 23, 2009 and the surgery was successfully performed about three weeks later. This record does not support an inference that OPP officials were deliberately indifferent to plaintiff's serious medical needs. See Dupuis v. Caskey, No. 4:08cv63-LRA, 2009 WL 3156527, at *4-5 (S.D. Miss. Sept. 28, 2009) (Inmate complained of inadequate medical care because he did not receive cataract surgery until 17 months after an optometrist recommended it. The court found no deliberate indifference because the prison doctor regularly monitored plaintiff's eyes, but did not recommend surgery; because "[i]t is common for cataract surgeries to be delayed, and cataract surgery is considered elective, according to the American Optometric Association's Optometric Clinical Practice Guidelines;" and because the surgery successfully restored plaintiff's vision. There "was no legal requirement that [the prison doctor] follow [the optometrist's] advice or that a medical specialist be summoned at a particular time."); Stevenson v. Pramstaller, No. 07-cv-14040, 2009 WL 804748, at *5 (E.D. Mich. Mar. 24, 2009) (citing Samonte, 2008 WL 176462, at *1; Dunville, 2000 WL 1206653, at *1) (no deliberate indifference when physicians agreed that cataract surgery was not immediately necessary because plaintiff's eye condition was medically

stable for almost a year); Padichit, 2006 WL 1897518, at *1-2 (no deliberate indifference when plaintiff saw physicians at least 20 times for his various conditions, including cataracts, and received laser eye surgery no later than six months after his initial complaints, even if surgery was not fully successful).

Although Davis has alleged delay in receiving medical care and has expressed dissatisfaction with the extent or effectiveness of his treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted). No such showing has been made on the current record.

Mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298. No such showing can be made when the obvious reason for the

initial delay in plaintiff's cataract surgery was the exercise of medical judgment in connection with his high blood pressure and when the surgery was scheduled promptly after his blood pressure was brought under control. Although the record is silent as to why the surgery did not occur as scheduled on May 18, 2009, plaintiff's transfer out of OPP on June 23, 2009 made it impossible for OPP officials to reschedule the surgery.

Contentions like Davis's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Samonte, 2008 WL 176462, at *1(Plaintiff who waited for cataract surgery for more than two years after his initial complaint, but who routinely saw doctors to monitor his condition during that time, could not establish deliberate indifference. Prison doctor's "refusal to authorize cataract surgery after another doctor determined that such surgery was an option was a 'difference of medical opinion,' insufficient by itself to raise a triable issue of deliberate indifference."); Rowe v. Norris, 198 Fed. Appx. 579, 2006 WL 2711945, at *2 (8th Cir. 2006) (no constitutional violation when inmate disagreed with

physician's choice of medication); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference); Dupuis, 2009 WL 3156527, at *5 ("[T]here was a legitimate medical disagreement" between the outside optometrist and the prison doctor "as to when the cataract should have been removed. Plaintiff's dissatisfaction with the timing of the surgery does not render this a constitutional claim, even if the surgery was recommended earlier."); Rylee v. Bureau of Prisons, No. 8:08-CV-1643-PMD-BHH, 2009 WL 633000, at *4 (D.S.C. Mar. 9, 2009) (citations omitted) (Defendants were "aware of the risk of harm to Plaintiff's right eye and have chosen to act by monitoring Plaintiff's vision until he meets prison guidelines to have the surgery. . . . Defendants' decision to adhere to federal prison guidelines rather than follow the optometrist's recommendation of cataract surgery constitutes a difference of medical opinion, which is insufficient, by itself, to raise a triable issue of deliberate indifference.").

For all of the foregoing reasons, plaintiff's complaints in this case about his medical care fail to state a claim for relief under Section 1983.

(B)    Unsanitary Conditions

As to the conditions of his confinement, Davis alleged in his written submissions and his testimony that, as a pretrial detainee, he slept on the floor for five days while in HOD and slept on a mattress on the floor for about two weeks in "the old jail." He testified that it was "overcrowded" in both HOD and "the old jail." He averred that, due to "increasing inmate population, the tents, originally . . . conceived as a temporary system" in the aftermath of Hurricane Katrina, were opened in 2009. He testified that, during the four months he was in the tent facility, the tents were always dirty, with "mice running all over the place." He complained that food was delivered to the tents, was placed on the concrete floor and was not placed in "warmers."

Davis testified that he was provided with cleaning supplies at times when he was housed in the "old jail," and "then we had no supplies." He said he asked for supplies but did not receive them until he kept asking repeatedly. He complained that the floors were not mopped and from time to time he had to mop the floor himself. He asserted that the air circulation, exhaust and ventilation systems are inadequate, and the showers and bathrooms are insufficient in number, dirty and smelly.

Davis was both a pretrial detainee and a convicted prisoner during the time period about which he complains. Regardless whether an inmate is a pretrial detainee or a convicted prisoner, however, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case. McCarty, 2007 WL 1191019, at *1; Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999). As previously noted, the Fifth Circuit held in Hare

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an inference that the conditions he described were the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and

the deliberate indifference standard enunciated in <u>Estelle</u>, 429 U.S. at 104, applies.

<u>Tamez</u>, 589 F.3d at 769-70; <u>Olabisiomotosho</u>, 185 F.3d at 526.

Applying this standard, Davis's allegations do not constitute violations of the Constitution. Just as with plaintiff's claim of inadequate medical care, two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." <u>Farmer</u>, 511 U.S. at 847. To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." <u>Alexander v. Tippah County</u>, 351 F.3d 626, 630 (5th Cir. 2003) (quoting <u>Woods v. Edwards</u>, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. <u>Farmer</u>, 511 U.S. at 847. A prison official cannot be held liable "unless the official <u>knows of and disregards an excessive risk to inmate health or safety</u>; the official <u>must both be aware of facts</u> from which the inference could be drawn that a substantial risk of serious harm exists, and <u>he must also draw the inference</u>." <u>Id.</u> at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that deliberate indifference is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

<u>Southard</u>, 114 F.3d at 551 (citations and quotations omitted) (emphasis added). Again, "'[s]ubjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511 U.S. at 838-40).

Davis's written allegations and testimony meet neither of these two requirements. The conditions he described, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation. Davis alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions.

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." <u>Holloway v. Gunnell</u>, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." <u>Talib v. Gilley</u>, 138 F.3d 211, 215 (5th Cir. 1998) (citing <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981)); <u>accord</u> <u>Hernandez v. Velasquez</u>. 522 F.3d 556, 560 (5th Cir. 2008).

Short-term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations. <u>Whitnack v. Douglas County</u>, 16 F.3d 954, 958 (8th Cir.

1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995). "[J]ails must provide only reasonably adequate hygiene and sanitation conditions." Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, 351 Fed. Appx. 274, 2009 WL 3438004, at *4 (10th Cir. 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

None of Davis's allegations about the conditions at the jail establish constitutional violations. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

Moreover, Davis cannot establish "deliberate indifference." He concedes that he was provided with cleaning supplies at times and that, when supplies ran out, he received additional supplies when he kept asking. Although he complained that the floors were not mopped, he admitted that he mopped the floor himself from time to time. Prison officials can constitutionally require inmates to keep their cells, living space and clothing clean by providing, or by requiring non-indigent inmates to purchase, cleaning supplies. Blake v. Hall, 668 F.2d 52, 57-58 (1st Cir. 1981); Lancaster v. Tilton, No. C 79-01630 WHA, 2008 WL 449844, at *19 (N.D. Cal. Feb. 15, 2008) (citing Gates, 376 F.3d at 342; Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981)); Sardon v. Peters, No. 04-C-7505, 1995 WL 609147, at *8 (N.D. Ill. Oct. 13, 1995). "This Eighth Amendment analysis does not change merely because the conduct of some inmates may have caused or contributed to the conditions." Roberts v. County of Mahoning, 495 F. Supp. 2d 670, 690 (N.D. Ohio 2005) (citing Blake, 668 F.2d at 57-58).

In the instant case, Davis merely disagrees that these efforts and supplies were adequate. See Tallmore v. Hebert, No. 07-1220, 2008 WL 2597939, at *2 (W.D. La. May 28, 2008) (Hill, M.J.) (citing Davis, 157 F.3d at 1006; Daigre v. Maggio, 719 F.2d 1310, 1312 (5th Cir. 1983)) ("Clearly, prisons need not be completely sanitized or as clean as one's home might be . . . . There is simply no constitutional requirement that any specific type of disinfectant be used by prison officials.").

Plaintiff's complaint that food trays were placed on the tent floors, rather than in "warmers," also fails to state a constitutional claim. See, e.g., Roper v. Strain, No. 10-341, 2010 WL 923151, at * (E.D. La. Mar. 8, 2010) (Lemelle, J.) (no constitutional claim when juice container was dragged across the floor before being placed on cart where juice was served); Wilkerson v. Champagne, No. 03-1754, 2003 WL 22872106, at *2 (E.D. La. Nov. 28, 2003) (Shushan, M.J.) (no constitutional claim when meals served from "old, cracked, dirty food trays" were not always hot); Sardon, 1995 WL 609147, at *8 (allegation that cold food was served fails to state a constitutional claim); Jackson v. Griffith, No. 1:93-CV-424, 1995 WL 21939, at *4-5 (E.D. Tex. Jan. 10, 1995), report & recommendation adopted, 1995 WL 313655 (Feb. 8, 1995) (claim regarding allegedly unsanitary food trays dismissed as frivolous).

For all of the foregoing reasons, Davis's complaint about the conditions of his confinement falls short of stating a constitutional violation, and this claim must also be dismissed.

(C)     Mattress/Bedding and Overcrowding

Davis alleges that overcrowding in the jail as a result of the lengthy aftermath of Hurricane Katrina forced him to sleep on the floor without a mattress for five days and on a mattress on the floor for two weeks, which violated his constitutional rights. It

cannot be said that plaintiff faced a substantial risk of serious harm in the constitutional sense from these temporary conditions.

As to overcrowding, "the mere fact that prisoners are confined in overcrowded conditions does not in and of itself amount to a constitutional deprivation. . . . '[A]lthough overcrowding may give rise to unconstitutional conditions, overcrowding itself is not per se unconstitutional.'" Morrison v. Gusman, No. 10-217, 2010 WL 724173, at *7 (E.D. La. Feb. 22, 2010) (Zainey, J.) (quoting Castillo v. Cameron County, 238 F.3d 339, 354 (5th Cir. 2001)) (citing Rhodes, 452 U.S. at 347-50) (additional citations omitted).

The Fifth Circuit has not rendered a binding precedential decision concerning the constitutionality of a temporary mattress deprivation, but it addressed a situation similar to that alleged by Davis in an unpublished opinion. The district court vacated the jury's verdict, which had found that depriving the plaintiff inmate of a mattress, blanket and toilet paper for two and one-half days violated the Eighth Amendment, and granted judgment as a matter of law to the prison official defendants. The Fifth Circuit affirmed.

> The denial for two and one-half days of a mattress, a blanket, and toilet paper, without more, to an inmate with a cold [who was] confined indoors [in northern Mississippi in November] does not constitute a deprivation of the minimal civilized measures of life's necessities. Although the conditions of [plaintiff's] confinement were uncomfortable and even harsh, the conditions did not violate the Eighth Amendment's prohibition against cruel and unusual punishment. The denial of a blanket and a mattress was pursuant to a prison regulation denying bedding to

47

> inmates in isolation in order to prevent the higher risk of inmate suicide, a
> legitimate penological interest. Even prison regulations that infringe a
> prisoner['s] constitutional rights are upheld if they are reasonably related
> to a legitimate penological interest.

Phillips v. East, 81 Fed. Appx. 483, 2003 WL 22770162, at *2 (5th Cir. 2003) (citing

Turner v. Safley, 482 U.S. 78, 89 (1987); Palmer v. Johnson, 193 F.3d 346, 351-52 (5th

Cir. 1999); Talib, 138 F.3d at 215; Novak v. Beto, 453 F.2d 661, 665-66 (5th Cir. 1971)).

Phillips was in a different procedural posture than the instant case, having

proceeded through a trial on the merits, and the Fifth Circuit considered the evidence that

had been introduced at trial concerning defendants' legitimate penological reasons for

depriving the inmate of a mattress. Regardless of those reasons, the appellate court

plainly stated that the denial of a mattress for two and one-half days to an inmate who is

incarcerated indoors does not violate the Eighth Amendment. Phillips is persuasive

authority that the Fifth Circuit would find that Davis's lack of a mattress for five days

beginning on October 30th was not unconstitutional.

Moreover, several other circuits have held in recent years that deprivation of a

mattress for a limited period of time is not per se unconstitutional. See, e.g., Fischer v.

Ellegood, 238 Fed. Appx. 428, 2007 WL 1624315, at *4 (11th Cir. 2007) (sleeping on

floor for five days does not violate Eighth Amendment); Stephens v. Cottey, 145 Fed.

Appx. 179, 2005 WL 1971700, at *1(7th Cir. 2005) (no Eighth Amendment violation

when prisoner slept without a mattress on a metal bedframe for three days and on the

floor with no bedframe for five days); Grissom v. Davis, No. 02-1916, 2003 WL 343248, at *2 (6th Cir. Feb. 12, 2003) (seven days without mattress, sheets or blanket was not deprivation of basic human needs when it did not cause serious harm); O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82, 84 (8th Cir. 1996) (sleeping on concrete slab without mattress or blanket for four days in cell ten feet from exterior door during winter did not deny plaintiff minimal civilized measures of life's necessities); Schroeder v. Kaplan, No. 93-17123, 1995 WL 398878, at *2 (9th Cir. July 7, 1995) (sleeping on floor without mattress for four weeks does not violate Eighth Amendment). Provision of bedding falls within those matters committed to the sound discretion of prison administrators. Kot v. Matty, No. 90-7644, 1991 WL 246906, at *2 (E.D. Pa. Nov. 15, 1991), aff'd, 980 F.2d 723 (3d Cir. 1992).

Although former Chief Judge Little of the Western District of Louisiana has declared that "[a] mattress is a basic human right, which must be provided to a detainee," the Fifth Circuit has not adopted his position and the cases that he cited to support that far-reaching proposition do not, on closer examination, mandate that conclusion. Oladipupo v. Austin, 104 F. Supp. 2d 626, 639 (W.D. La. 2000) (Little, C.J.) ("Oladipupo I") (citing Thompson v. City of Los Angeles, 885 F.2d 1439, 1449 (9th Cir. 1989) ("valid Fourteenth Amendment claim where pretrial detainee forced to sleep on the floor for two nights"); Lyons v. Powell, 838 F.2d 28, 31 (1st Cir. 1988) ("pretrial

detainee's allegation that he was forced to sleep on floor mattress sufficient condition to show deprivation of due process"); <u>Anela v. Wildwood,</u> 790 F.2d 1063, 1067 (3d Cir. 1986) ("allegation that City failed to provide bed or mattress to pretrial detainees states actionable constitutional claim"); <u>Lareau v. Manson</u>, 651 F.2d 96, 105 (2d Cir. 1981) ("prison's use of floor mattresses for pretrial detainees unconstitutional 'without regard to the number of days for which a prisoner is so confined'"); <u>Martino v. Carey</u>, 563 F. Supp. 984, 1002 (D. Or. 1983) ("fact that jail overcrowding forced some pretrial detainees to sleep directly on floor contributed to finding that overcrowded conditions violated detainees' Fourteenth Amendment rights"); <u>Vazquez v. Gray</u>, 523 F. Supp. 1359, 1365 (S.D.N.Y. 1981) ("use of floor mattresses for pretrial detainees unconstitutional")); <u>Oladipupo v. Austin</u>, 104 F. Supp. 2d 654, 659 (W.D. La. 2000) (Little, C.J.) ("<u>Oladipupo II</u>") (citing the same cases).

Those decisions applied outdated legal standards different from the current "deliberate indifference" standard for an episodic omission by jail officials. Thus, I find the reasoning and holdings of the more recent Sixth, Seventh, Eighth, Ninth and Eleventh Circuit cases cited above and the Fifth Circuit's holding in <u>Phillips</u> more persuasive in the instant case than the <u>Oladipupo</u> decisions and cases cited therein.

Furthermore, "[t]o the extent that a prisoner must sleep on a mattress placed on the floor, that is not a violation because the Constitution does not require elevated beds."

Morrison, 2010 WL 724173, at *7 (citing Sanders v. Kingston, 53 Fed. Appx. 781, 2002 WL 31856352, at *1 (7th Cir. 2002); Finfrock v. Jordan, No. 95-3395, 1996 WL 726426, at *1 (7th Cir. Dec. 6, 1996); Mann v. Smith, 796 F.2d 79, 85 (5th Cir. 1986); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985); McCarty v. McGee, No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008); Cooler v. Escambia County Det. Facilities, No. 3:07cv188, 2007 WL 3072418, at *6 (N.D. Fla. Oct. 22, 2007)) (additional citations omitted).

Davis alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions, from being deprived of a mattress for five days or from sleeping on a mattress on the floor for two weeks. Roper, 2010 WL 923151, at *3 (citing Phillips, 2003 WL 22770162, at *2; Hunt v. Lee County Sheriff's Dep't, No. 1:08CV284, 2009 WL 4505890, at *4 (N.D. Miss. Nov. 25, 2009); McAllister v. Strain, No. 08-5174, 2009 WL 500560, at *2-3 (E.D. La. Feb. 25, 2009) (Feldman, J.); Desroche v. Strain, 507 F. Supp. 2d 571, 580-81 (E.D. La. 2007) (Feldman, J.)); Morrison, 2010 WL 724173, at *7.

Because plaintiff has failed to state a claim of constitutional magnitude, this claim must be dismissed.

(D)    Lack of Adequate Security

Davis further alleged that security was inadequate and that sometimes no security officers were visible for up to three hours.  He alleged that the jails were understaffed, with several blind spots where incidents occur unknown to the deputies, resulting in blatant disregard for inmate safety.  Although he admittedly suffered no physical harm as a result of the alleged lack of security, he testified that he felt his life was threatened because he saw six to ten other inmates stabbed.

Plaintiff's claim in this regard is deficient under Section 1983 because he fails to allege "physical injury" sufficient to support his claim for monetary damages. Specifically, the Prison Litigation Reform Act of 1996 includes the following requirement in 42 U.S.C. § 1997e(e):  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury while in custody without a prior showing of physical injury." (Emphasis added). Davis does not allege any specific "injuries" as a result of the alleged lack of adequate security.

In recent decisions, the Fifth Circuit has consistently enforced the statutory physical injury requirement for prisoners who seek compensatory damages for intangible emotional or psychological harm, such as has been alleged by Davis in this case.

Hutchins v. McDaniels, 512 F.3d 193, 196 (5th Cir. 2007); Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005); Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001).

The Fifth Circuit has explained that "[t]he 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" Alexander v. Tippah County, 351 F.3d 626, 631 (5th Cir. 2003) (citing Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (quoting Siglar, 112 F.3d at 193); accord Mayes v. Travis State Jail, No. 07-51086, 2008 WL 4657078, at *1 (5th Cir. Oct. 22, 2008). Thus, in Alexander, the court found that "[Section] 1997e(e) precludes [plaintiffs] from recovering for their emotional and mental injuries" when the only physical injuries they suffered were nausea and one incident of vomiting. Id. Similarly, in Siglar, the court held that a prisoner's ear that was sore and bruised for three days was merely a de minimis injury. Siglar, 112 F.3d at 193.

In this case, Davis admittedly suffered no physical injuries of any kind as a result of the alleged lack of adequate security, but stated only that he was afraid. As Section 1997e(e) provides and Fifth Circuit case law makes clear, he is precluded as a matter of law from recovering damages for the psychological or other emotional injury he has asserted.

Furthermore, although Section 1997e(e) allows recovery of punitive and/or nominal damages in an appropriate case, Hutchins, 512 F.3d at 197-98, Davis has not

shown any constitutional violation that would entitle him to even nominal damages, "[n]or has [plaintiff] shown the 'evil intent' or 'callous indifference' required to obtain punitive damages." Allen v. Stalder, 201 Fed. Appx. 276, 2006 WL 2852925, at *1 (5th Cir. 2006) (citing Williams v. Kaufman County, 352 F.3d 994, 1015 (5th Cir. 2003)). Thus, plaintiff's complaint must be dismissed in this regard.

## RECOMMENDATION

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment, Record Doc. No. 25, be DENIED; that defendants' motions to dismiss plaintiff's complaint based exclusively on res judicata, Record Doc. Nos. 17 and 20, be DENIED; and that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[4]

New Orleans, Louisiana, this ___13th___ day of April, 2010.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[4]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.